Craig SCHWERDT, Plaintiff— Appellant,

v.

INTERNATIONAL FIDELITY INSURANCE COMPANY, Defendant—Appellee.

No. 00–56385.

D.C. No. CV–97–04907–NM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Decided Jan. 25, 2002.

Before REINHARDT and TALLMAN, Circuit Judges, and DAMRELL, District Judge.*

### MEMORANDUM [1]

This diversity action arises from a failed business transaction between plaintiff-appellant Craig Schwerdt ("Schwerdt") and two Michigan businessmen, Anatol Nofar and Hector Vasquez. Defendant–Appellee International Fidelity Insurance Company ("IFIC") is the surety of the underlying agreement between Schwerdt and Nofar and Vasquez. On July 7, 1997, Schwerdt filed the instant action against IFIC for breach of contract and breach of the covenant of good faith and fair dealing. Ultimately, the district court granted partial summary judgment in favor of Schwerdt on his breach of contract claim; on his claim for breach of the covenant of good faith and fair dealing, the court granted summary judgment in favor of IFIC, finding that such claim was barred by the California Supreme Court's decision in *Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4th 28, 86 Cal.Rptr.2d 855, 980 P.2d 407 (1999), which held that tort damages were not allowed in an action for breach of a construction performance bond. After the court rendered the above decisions, Schwerdt sought to amend his complaint to add claims, on the basis of "newly discovered evidence," for fraud and negligence against IFIC. The court denied Schwerdt's motion.

Schwerdt contends (1) the district court erred in granting summary judgment to IFIC on his claim for breach of the cove-

---

* The Honorable Frank C. Damrell, Jr., United States District Judge for the Eastern District of California, sitting by designation.

nant of good faith and fair dealing because *Cates* is inapplicable to the type of bond at issue here, and (2) the court erred in denying him leave to amend since he diligently sought such leave and had valid grounds for an amendment. For the reasons set forth below, we affirm both decisions of the district court.

## BACKGROUND

Schwerdt was the sole owner of certain computer hardware and software for a four-way video conferencing system (the "Technology"). On June 17, 1993, Schwerdt entered into a contract to sell the Technology to Vasquez and Nofar (collectively, the "Buyers") for $487,500. Shortly after the execution of the contract, the parties orally agreed that before shipment of the Technology, Buyers would provide a $50,000 bond to guarantee their compliance with the terms of the contract.

On July 2, 1993, IFIC issued the subject surety bond. It provided that IFIC would pay the penal sum of $50,000 in the event that Buyers failed to pay the amount due or return the Technology to Schwerdt by November 10, 1993. Buyers failed to do so. Schwerdt notified IFIC of Buyers' breach and demanded payment on the bond. In response, IFIC stated that it would not pay on the bond until after a court determined that Buyers had breached the contract.

Schwerdt filed a complaint for breach of contract against Buyers in the Central District of California; the court entered judgment in Schwerdt's favor on August 1, 1996 and awarded him $637,000.

On July 11, 1996, Schwerdt again made a written demand to IFIC for payment of the $50,000 due under the bond. This time IFIC refused to pay on the basis it had been discharged by an order of the state court of Michigan. In September 1996,

IFIC foreclosed on the collateral which secured the bond.

Thereafter, on July 7, 1997, Schwerdt filed this action against IFIC for breach of contract and breach of the covenant of good faith and fair dealing. On July 17, 1998, the district court granted partial summary judgment in favor of Schwerdt on his breach of contract claim but found that triable issues of fact existed as to the claim for breach of the covenant of good faith and fair dealing. On January 4, 2000, following a renewed motion by IFIC, the district court granted summary judgment in favor of IFIC on Schwerdt's claim for breach of the covenant of good faith and fair dealing, holding that tort damages were not allowed in an action for breach of a surety contract.

On January 10, the court held a status conference. Schwerdt made no mention at this conference that any issue remained in the litigation. On January 26, 2000, Schwerdt filed an ex parte application for leave to file an amended complaint, alleging newly discovered evidence to support a claim for fraud and negligence. Schwerdt argued that he could not have brought his motion sooner due to IFIC's failure to timely produce Jeffrey Goldfarb, the agent who issued the subject bond and whose deposition was not taken until October 7, 1999. Schwerdt informed IFIC, on November 8, 1999, of his intention to file an amended complaint and asked that IFIC stipulate to the amendment. IFIC received the proposed complaint on December 6, 1999, and responded the following day that it would not stipulate. Schwerdt then asked that the parties meet to discuss the issue. They met on December 27, 1999, but did not reach an agreement.

On February 17, 2000, the district court denied Schwerdt's ex parte application. Schwerdt filed another ex parte application, seeking reconsideration of the court's

decision. The court denied that application. Judgment was entered on July 20, 2000.

## ANALYSIS

### 1. Applicability of *Cates*

A grant of summary judgment is reviewed *de novo*. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1111 (9th Cir.2001). The appellate court's review is governed by the same standard used by the district court under Federal Rule of Civil Procedure 56(c). *Id.*

▇▇▇ It is well-established under California law that a covenant of good faith and fair dealing is implicit in every contract. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). "The essence of the implied covenant is that neither party to a contract will do anything to injure the right of the other to receive the benefits of the contract." *Cates*, 21 Cal.4th at 43, 86 Cal.Rptr.2d 855, 980 P.2d 407. Because the covenant of good faith and fair dealing is essentially a contract term that seeks to effectuate the intentions of the parties, compensation for its breach has been limited to contract rather than tort remedies. *Foley*, 47 Cal.3d at 684, 254 Cal.Rptr. 211, 765 P.2d 373. The California Supreme Court has only recognized one exception: tort remedies are available for a breach of the covenant in cases involving insurance policies. *Hunter v. Up–Right, Inc.*, 6 Cal.4th 1174, 1180, 26 Cal.Rptr.2d 8, 864 P.2d 88 (1993). In the insurance context, an insured may recover damages not otherwise available in a contract action, including emotional distress damages and punitive damages if there has been oppression, fraud, or malice by the insurer. *Cates*, 21 Cal.4th at 43–44, 86 Cal.Rptr.2d 855, 980 P.2d 407.

The California Supreme Court held in *Cates* that the "exceptional approach" taken for breaches in the insurance policy setting should not be extended to breaches in the context of a surety bond given to assure performance on a construction contract. *Id.* at 52, 86 Cal.Rptr.2d 855, 980 P.2d 407. The principles underlying the holding in *Cates* apply here. First, under *Cates*, it is not determinative that a surety bond is defined as a form of insurance under California's Insurance Code. *Id.* at 47–48, 86 Cal.Rptr.2d 855, 980 P.2d 407. Instead, the court must look at the policy considerations of unequal bargaining power and adhesion, the public interest, and the fiduciary nature of the relationship to determine whether they support the availability of tort remedies. *Id.* at 52, 86 Cal.Rptr.2d 855, 980 P.2d 407.

Just as in *Cates*, there are no elements here of adhesion or disparate bargaining power. *Id.* Schwerdt decided the form of the bond which he was willing to accept from Buyers, and he could have rejected the surety bond provided. Thus, he did not suffer from a position of unequal bargaining power. Schwerdt argues that the IFIC bond differs from the performance bond in *Cates* because the IFIC bond did not incorporate the terms of the underlying contract between Schwerdt and Buyers. Although the court in *Cates* mentioned this fact in support of its finding of equal bargaining power, it is not critical to the analysis—it was merely an example to show the lack of adhesion in construction performance bonds. *Id.* at 52–53, 86 Cal. Rptr.2d 855, 980 P.2d 407. What is critical is that Schwerdt determined the terms of the payment bond at issue here, and had the power to seek out other principals if he objected to the terms of the bond provided.

Moreover, the IFIC bond was a means to obtain economic protection for

Schwerdt, and therefore its issuance does not implicate public policy concerns. Unlike insurers who seek protection against "accidental and generally unforeseeable losses caused by a calamitous or catastrophic event," obligees such as Schwerdt merely seek protection against an adverse financial outcome. *Id.* at 53, 86 Cal. Rptr.2d 855, 980 P.2d 407. In such instances public policy concerns are not implicated.

Finally, the relationship between Schwerdt and IFIC is not fiduciary in nature. The relationship is tripartite, implicating three separate legal interests, and the conditional nature of IFIC's obligations and its right to assert the defenses of Buyers distinguish Schwerdt and IFIC's relationship from the insurer-insured relationship. *Id.* at 56, 86 Cal.Rptr.2d 855, 980 P.2d 407. Moreover, IFIC had no responsibility to defend Schwerdt against third-party claims, and it had no right to represent Schwerdt's interests by virtue of the bond. *Id.*

Because the bond at issue here easily falls within the confines of the *Cates* decision, the court affirms the district court.

## 2. Denial of Leave to Amend

Once the court has entered a pretrial scheduling order setting the time for amendment of pleadings, the standards of Federal Rule of Civil Procedure ("Rule") 16, rather than Rule 15, govern. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–08 (9th Cir.1992); *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir.2000). Here, both the district court and the parties to this appeal mistakenly relied on Rule 15 in analyzing whether Schwerdt was entitled to amend his complaint.

In general, the pretrial scheduling order can only be modified "upon a showing of good cause." Fed.R.Civ.P. 16(b). The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson,* 975 F.2d at 609 (internal quotations omitted). Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking an amendment and the prejudice to the opposing party, the "good cause" standard set forth in Rule 16 primarily focuses upon the diligence of the party requesting the amendment. *Id.* "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* at 609 (citations omitted).

Upon examining the record, and the chronology of events offered by both parties, it is clear that from October 7, 1999, the date of Goldfarb's deposition, Schwerdt knew of the basis for seeking to amend his complaint. Despite this fact, he waited one month, until November 8, to inform IFIC of his intention to seek leave to amend. While such notification was required under the local rules,[2] the rules did not relieve Schwerdt of his paramount obligations under Rule 16 to *diligently* seek amendment of his complaint. Schwerdt was told on December 7 that IFIC would not stipulate to amendment of the complaint. Nevertheless, he waited another seven weeks to seek leave to amend, and when he did so, on January 26, 2000, he had to seek leave via *ex parte* application because the court had issued summary judgment in favor of IFIC on January 4 and judgment was set to be entered on

---

**2.** Central District Local Rule 7.4.1 requires a party to inform and discuss, preferably in person, with the opposing party its intention to file a motion at least 20 days prior to filing it.

January 31. Furthermore, Schwerdt did not advise the court of the proposed motion to amend at the January 10 status conference at which the court expressly concluded that nothing further remained to be done in the case but entry of judgment.

Although the district court applied the more lenient Rule 15 standard in ruling on Schwerdt's ex parte application, we have no difficulty in concluding that because Schwerdt did not diligently seek amendment of his complaint, this court may property affirm the district court under the more stringent Rule 16.

AFFIRMED.

---

* The Honorable Charles Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.